UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

JANICE M. VAN MATRE,              )
                                  )
            Plaintiff,            )
                                  )
      v.                          )        No. 1:06CV133 MLM
                                  )
MICHAEL J. ASTRUE,[1]             )
Commissioner of Social Security,  )
                                  )
            Defendant.            )

BRIEF IN SUPPORT OF THE ANSWER

Nature of Action and Prior Proceedings

This suit involves an application made under Title II of the Social Security Act (the Act),

42 U.S.C. §§ 401 et seq. (Tr. 65-67).  Section 405(g) of the Act provides for judicial review of a

"final decision" of the Commissioner of the Social Security Administration under Title II.

Plaintiff's application was denied (Tr. 27, 48-52).[2]  On August 25, 2005, following a

hearing, an administrative law judge (ALJ) rendered a partially favorable decision in which he

found that Plaintiff was not under a "disability" as defined in the Act from Plaintiff's alleged

onset date, January 2, 2003, through June 9, 2003 (Tr. 19).  The ALJ found that Plaintiff was

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted, for Commissioner Jo Anne B. Barnhart [or Acting Commissioner Linda S. McMahon] as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case.  See 20 C.F.R. §§ 404.906, 404.966 (2006). These modifications include, among other things, the elimination of the reconsideration step and, in some cases, the elimination of the Appeals Council review step in the administrative appeals process.  See id.  In this case, only the reconsideration step was eliminated.

under a "disability" as defined in the Act from June 10, 2003, through July 21, 2004 (Tr. 19).

However, the ALJ found that Plaintiff medically improved so that she was no longer under a

"disability" after July 21, 2004 (Tr. 19). On July 21, 2006, the Appeals Council of the Social

Security Administration denied Plaintiff's request for review (Tr. 3-5). Thus, the decision of the

ALJ stands as the final decision of the Commissioner.

## Statement of Facts

Plaintiff filed her application for disability benefits under Title II on March 5, 2004 (Tr.

65-67). She stated that she was born in 1957, and alleged that she became disabled beginning

January 2, 2003 (Tr. 65). In her Disability Report, she alleged disability due to low back and hip

problems, pain in her leg, and arthritis in her back (Tr. 107). The Commissioner adopts the

findings of the ALJ pertaining to Plaintiff's medical history. A more specific analysis of the

facts is incorporated into the Argument below.

## Statement of the Issues

The general issue before the court is whether the final decision of the Commissioner is

supported by substantial evidence on the record as a whole. See Peña v. Chater, 76 F.3d 906,

908 (8th Cir. 1996); 42 U.S.C. § 405(g). The specific issues in this case are:

I.  Whether the ALJ properly determined Plaintiff was not "disabled" as defined in the Act from January 2, 2003, through June 9, 2003; and

II. Whether the ALJ properly determined that Plaintiff's disability ended on July 21, 2004, due to medical improvement.

## Standard of Review

The standard of appellate review of the Commissioner's decision is limited to a

determination of whether the decision is supported by substantial evidence on the record as a

whole.  See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004).  Substantial evidence is less

than a preponderance, but enough that a reasonable mind might accept it as adequate to support a

decision."  Id.  As long as substantial evidence in the record supports the Commissioner's

decision, the court may not reverse it either because substantial evidence exists in the record that

would have supported a contrary outcome or because the court would have decided the case

differently.  See Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005)("Whether the record

supports a contrary result or whether we might decide the case differently is immaterial.").  If,

after reviewing the record, the Court finds that it is possible to draw two inconsistent positions

from the evidence and one of those positions represents the Commissioner's findings, the Court

must affirm the decision of the Commissioner.  See id.  The Eighth Circuit has repeatedly held

that it defers heavily to the findings and conclusions of the Social Security Administration.  See,

e.g., Neal ex rel. Walker v. Barnhart, 405 F.3d 685, 688 (8th Cir. 2005); Howard v. Massanari,

255 F.3d 577, 581 (8th Cir. 2001).

Argument

To establish entitlement to benefits, Plaintiff must show that she is unable to engage in any

substantial gainful activity by reason of a medically determinable impairment which has lasted or

can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. §

423(d)(1)(A) and § 1382c(a)(3)(A).  The Supreme Court in Barnhart v. Walton, 122 S. Ct. 1265

(2002), upheld the Commissioner's interpretation of this statutory definition which requires that the

disability, and not only the impairment, must have existed or be expected to exist for 12 months.

Plaintiff has not met this burden for the periods at issue.

I.    The ALJ Properly Determined that Plaintiff was not "Disabled" as Defined in the Act from
      January 2, 2003, through June 9, 2003.

Plaintiff alleged a disability onset date of January 2, 2003 (Tr. 65). However, after reviewing the evidence the ALJ properly found that Plaintiff was not "disabled" as defined in the Act until June 10, 2003 (Tr. 14-20). In making this determination, the ALJ performed a proper credibility determination by evaluating Plaintiff's subjective complaints using the framework set forth in <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984), the regulations at 20 C.F.R. § 404.1529, and Social Security Ruling (SSR) 96-7p. If the ALJ finds inconsistencies between Plaintiff's subjective complaints and the evidence of record, he may discount such complaints. <u>Id</u>. The ALJ found that based on the evidence as a whole, Plaintiff's allegations of limitation were not fully credible (Tr. 15-19).

The Eighth Circuit has held that "where adequately explained and supported, credibility findings are for the ALJ to make." <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000) (citing <u>Tang v. Apfel</u>, 205 F.3d 1084, 1087 (8th Cir. 2000)). When an ALJ specifically discredits a Plaintiff's testimony for stated reasons, the court normally defers to the ALJ's determinations of credibility. <u>See</u> <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 590 (8th Cir. 2004) ("We will not substitute our opinion for that of the ALJ, who is in a better position to assess credibility.").

Plaintiff argues that the ALJ erred by not giving appropriate weight to her subjective complaints, and that the ALJ should not have discredited her subjective complaints due to the lack of objective medical evidence supporting those allegations. Pl.'s Br. at 7. Plaintiff cites <u>Cole v. Harris</u>, 641 F.2d 613 (8th Cir. 1981), in support of this argument. In <u>Cole</u>, the Court found the ALJ had placed too much emphasis on the dearth of objective medical evidence. <u>See</u> <u>id</u>. at 615. However, more recent cases clarify that although an ALJ may not discount allegations of disabling pain solely on the lack of objective medical evidence, a lack of objective

medical evidence is an important factor which the ALJ may consider in determining a claimant's

credibility. See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004) (citing Tennant v. Apfel,

224 F.3d 869, 871 (8th Cir. 2000)).  In this case, as discussed below, the ALJ properly

considered the objective medical evidence as one factor among many which detracted from the

credibility of Plaintiff's subjective complaints.

    The ALJ considered the medical evidence of record, and found that Plaintiff sought very

little treatment for back, hip, or leg pain prior to June 10, 2003 (Tr. 16).  The records show that

she sought chiropractic treatment on January 22, 2003, reporting only a five day history of back

pain after having lifted and moved furniture (Tr. 16, 326).  By February 5, 2003, the chiropractor

noted Plaintiff's periods of low back pain and stiffness were less frequent and less intense (Tr.

16, 324), and by February 12, 2003, Plaintiff reported that she was doing "much better" and that

she experienced only "occasional" pain and stiffness (Tr. 16, 323).  She sought no further

chiropractic care.  Plaintiff sought no further treatment of any kind for back pain until May 15,

2003, at which time she reported "intermittent" back and hip pain (Tr. 16, 131).  Plaintiff sought

no further treatment prior to June 10, 2003.  The Eighth Circuit has repeatedly noted that an ALJ

may properly take into account that a claimant had not made significant efforts to seek medical

treatment to alleviate her alleged pain, and that a claimant was not taking any prescription

medicine intended to treat such pain.  See Davis v. Apfel, 239 F.3d 962, 966-67 (8th Cir.

2001)(citing Shannon v. Chater, 54 F.3d 484, 487(8th Cir.1995); Kelley v. Callahan, 133 F.3d

583, 589 (8th Cir. 1998)(Allegations of disabling pain may be discredited by evidence that the

claimant has received minimum medical treatment and/or has taken only occasional pain

medications); Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997) (citing Ostronski v. Chater, 94

F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain are inconsistent with the failure to seek regular treatment).

The ALJ considered the objective medical evidence from January 2, 2003, through June 9, 2003, and found that it did not support a finding of disability. Although an ALJ may not discount allegations of disabling pain solely on the lack of objective medical evidence, a lack of objective medical evidence is an important factor which the ALJ may consider in determining a claimant's credibility. See Forte, 377 F.3d at 895 (citing Tennant, 224 F.3d at 871). The record contains very little objective evidence for this period of time. On May 15, 2003, examination revealed a full range of motion and that Plaintiff could "nearly" touch her toes (Tr. 131). A magnetic resonance imaging ( MRI) scan dated May 16, 2003, showed degenerative disc disease in the lumbar spine with stenosis and disc bulging at L4-5 and L3-4 (Tr. 272). However, the ALJ noted that medical records prior to June 10, 2003, did not document significant deficits in strength, motion, coordination, reflexes, tone and sensation, or muscle spasm or tenderness (Tr. 16, 18). Accordingly, the ALJ properly found that the objective medical evidence also failed to bolster Plaintiff's claims of disabling pain prior to June 10, 2003 (Tr. 16).

The ALJ noted that the record did not document the use of strong narcotic pain medications prior to June 10, 2003 (Tr. 18). In fact, it does not appear that Plaintiff was prescribed any medications for back or hip pain prior to June 10, 2003 (Tr. 131, 323-26). As noted above, the lack of prescription pain medication detracts from the credibility of Plaintiff's subjective complaints. See Davis v. Apfel, 239 F.3d 962, 966-67 (8th Cir. 2001)(citing Shannon v. Chater, 54 F.3d 484, 487(8th Cir.1995)(an ALJ may properly take into account that a claimant was not taking any prescription medicine intended to treat such pain); Kelley v. Callahan, 133

F.3d 583, 589 (8th Cir. 1998)(Allegations of disabling pain may be discredited by evidence that the claimant has received minimum medical treatment and/or has taken only occasional pain medications).

The ALJ considered that no physician had restricted Plaintiff's activities or imposed any functional limitations (Tr. 18). In fact Plaintiff was advised to focus on exercise to improve her cardiac health (Tr. 319). She stated that although she had not been exercising regularly, she was "staying active with her young children" (Tr. 319). The ALJ may properly consider physician imposed restrictions, or lack thereof, in making his credibility determination. See Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir. 2006) ("There is no indication in the treatment notes that either Dr. Freiman or any of Choate's other doctors restricted his activities, or advised him to avoid prolonged standing or sitting."); Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir.1996) (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability)).

Plaintiff testified at the hearing that she needed to lie down two to four times per day for 30 minutes to one hour at a time, for a total of three to five hours per day (Tr. 361-62, 370). The ALJ noted, however, that there is no evidence Plaintiff was advised to lie down during the day. The fact that no physician stated that Plaintiff needed to lie down during the day indicates that Plaintiff was lying down due to choice rather than medical necessity. See Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) ("Finally, there is no medical evidence supporting Zeiler's claim that she needs to lie down during the day."); Fredrickson v. Barnhart, 359 F.3d 972, 977 n.2 (8th Cir. 2004) ("There is no evidence in the record that Fredrickson complained of such severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily."); Hinkle v.

Callahan, 963 F. Supp. 1533, 1546 (W.D. Mo. 1997) (medical evidence did not support the plaintiff's claim that he was required to lie down and rest during the day).

The ALJ noted that there was no medical evidence indicating any treating physician recommended Plaintiff cease working, nor any other evidence, such as an employer's letter, that established her work activity had deteriorated as of the alleged onset date (Tr. 18). In fact, Plaintiff testified at the hearing that she had quit her job in July 2002 because they were moving (Tr. 352-53). It is significant that Plaintiff stopped working for reasons other than her allegedly disabling impairments. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) ("Furthermore, Goff stopped working because she was fired for slapping a patient, not because of her disability."); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("Since the evidence supports a finding that Mr. Depover left because the job ended, we believe that it was not unreasonable for the ALJ to find that this work 'suggests that his impairments are not as severe as alleged.'").

The ALJ considered that Plaintiff alleged many significant limitations of daily activities (Tr. 19, 360-63, 366). These allegations included standing for only five to ten minutes at a time, performed limited household chores, any lying down for thee to five hours per day (Tr. 360-63, 366, 370). However, he noted that allegations of disability are not self-proved by accompanying allegations of limited activities (Tr. 19). Although if accepted as true, Plaintiff's daily activities show some limitations, the ALJ is not required to believe all of a claimant's assertions concerning her activities. See Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996). The ALJ found that for the many reasons discussed above, the minimal and conservative treatment, the lack of objective findings, the lack of physician imposed limitations, the lack of even

prescription medications, and leaving work for reasons other than disability, Plaintiff's allegations, including her allegations of severely limited daily activities, were not credible (Tr. 19). The ALJ may discount subjective complaints if inconsistencies are apparent in the evidence as a whole. See Eichelberger, 390 F.3d at 589 ("We have been careful to explain that an ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances."); Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)(citing Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999)).

Finally, the ALJ considered that Plaintiff's earnings record showed a fairly steady work history (Tr. 19). See O'Donnell v. Barnhart, 318 F.3d 811, 817 (8th Cir. 2003)(prior work history of fourteen years supports credibility)(citing Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999)). However, the ALJ found that any credibility this afforded Plaintiff was overwhelmed by the many factors discussed above including: minimal and conservative treatment; the lack of objective findings; the lack of physician imposed limitations; the lack of any prescription pain medication; and leaving work for reasons other than disability (Tr. 19).

Because the ALJ articulated the inconsistencies upon which he relied in discrediting Plaintiff's testimony regarding her subjective complaints, and because his credibility finding is supported by substantial evidence on the record as a whole, his credibility finding should be affirmed. See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996).

After considering the evidence and properly finding Plaintiff's subjective complaints were not fully credible, the ALJ proceeded to the residual functional capacity (RFC) determination. RFC is the most an individual can do despite her limitations, see 20 C.F.R.§ 404.1545, and it is a determination based upon **all** the evidence of record. See Pearsall v.

9

Massanari, 274 F.3d 1211, 1217-1218 (8th Cir. 2001) (citation omitted); Dykes v. Apfel, 223

F.3d 865, 866-67 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p at pp. 8-9).  Although

it is a medical question, the RFC findings are not based only on "medical" evidence, i.e.,

evidence from medical reports or sources; rather an ALJ has the duty, at step four to formulate

RFC based on all the relevant, credible evidence of records.  See McKinney v. Apfel, 228 F.3d

860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the

relevant evidence, including the medical records, observations of treating physicians and others,

and an individual's own description of his limitations).  See also 20 C.F.R. § 404.1545; SSR 96-

8p.

       For the period prior to June 10, 2003, the ALJ determined that Plaintiff's impairments

precluded, at most, frequently lifting more than 25 pounds and occasionally lifting more than 50

pounds (Tr. 20-21).  He determined that the evidence supported no other limitations (Tr. 20).

The ALJ then considered the requirements of Plaintiff's past relevant work as an administrative

assistant (Tr. 20, 108).  Plaintiff indicated in her Disability Report that she was never required to

lift over 25 pounds (Tr. 71, 108).  Accordingly, the ALJ properly determined that her RFC did

not preclude the performance of her past relevant work as an administrative assistant as she

performed it (Tr. 20).

       Plaintiff argues that her testimony that she cannot sit and lift five pound objects for a six

hour period during an eight hour workday shows that she is disabled.  Pl.'s Br. at 4.  However, as

discussed above, the ALJ properly found Plaintiff's subjective complaints were not credible (Tr.

15-19).  Therefore, the ALJ properly considered only those impairments and restrictions he

found to be credible in formulating the RFC.  See Lacroix v. Barnhart, 465 F.3d 881, 887-88 (8th

Cir. 2006) (citing Garza v. Barnhart, 397 F.3d 1087, 1088 (8th Cir. 2005)(

Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995)); House v. Shalala, 34 F.3d 691, 694

(8th Cir. 1994).

Plaintiff also argues that the ALJ committed reversible error by failing to consider the

total effects of her combination of impairments. Pl.'s Br. at 7-8. While Plaintiff states that she

suffers from a "multitude" of impairments, she does not specifically identify those impairments,

nor does she identify any resultant functional limitations. The mere diagnosis of an impairment

is not evidence of functional limitations. See Weber v. Barnhart, 348 F.3d 723, (8th Cir. 2003)

(the ALJ properly determined Plaintiff could perform her past relevant work despite a diagnosis

of cirrhosis of the liver); Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990)(the mere

presence of a mental disturbance is not disabling per se, absent a showing of severe functional

loss establishing an inability to engage in substantial gainful activity); Bernal v. Bowen, 851

F.2d 297, 301 (10th Cir. 1988)(ruling that the focus is not on the diagnosis, but on the extent

plaintiff had limitations which prevented him from maintaining regular employment). "It is the

claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's

RFC." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing Anderson v. Shalala,

51 F.3d 777, 779 (8th Cir. 1995)).

A review of the ALJ's decision shows that he did consider other impairments including

diagnoses of obesity, hyperlipidemia, atherosclerotic heart disease, carpal tunnel syndrome, and

gastroesophogeal reflux disease (GERD) (Tr. 15-16, 197, 290-91, 314), but found at step two of

the sequential evaluation process that these impairments did not even rise to the level of "severe"

impairments (Tr. 15). Plaintiff does not dispute this determination. Furthermore, in his

credibility determination the ALJ considered the medical evidence regarding atherosclerotic heart disease, angina, sinusitis, colds, upper respiratory infections, GERD, obesity, hyperlipidemia, and a hiatal hernia, and found that these impairments did not impose any significant limitations of function (Tr. 15-16). The Eighth Circuit has held that an ALJ has sufficiently considered impairments in combination when he has separately discussed each impairment, the complaints of pain and the daily activities, and made a finding that Plaintiff's impairments did not prevent her from performing her past relevant work. See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." Browning, 958 F.2d at 821; Kisling v. Chater, 105 F.3d 1255, 1258 (8th Cir. 1997); see also 20 C.F.R. § 404.1523. The ALJ properly determined that Plaintiff was not disabled from her alleged onset date, January 2, 2003, through June 9, 2003.

II.      The ALJ Properly Determined Plaintiff's Disability Ended on July 21, 2004, Due to Medical Improvement.

The ALJ found that Plaintiff was under a disability as defined in the Act from June 10, 2003, through July 21, 2004, and was unable to perform her past relevant work or any other work during this period of time (Tr. 19). However, the ALJ found that since July 21, 2004, Plaintiff's condition had improved significantly, and that such improvement was related to her ability to work (Tr. 19-20).

Once a claimant becomes entitled to disability benefits, her continued entitlement to benefits must be reviewed periodically. See 20 C.F.R. § 404.1594(a). If there has been medical improvement related to the claimant's ability to work, or an exception to medical improvement applies, and the claimant is able to engage in substantial gainful activity, then a finding of not

disabled will be appropriate.  <u>Id.</u>  <u>See</u> <u>also</u> <u>Nelson v. Sullivan</u>, 946 F.2d 1314, 1315 (8th Cir.

1991).  Medical improvement is defined as the decrease in the medical severity of the

impairment(s) which were present at the time of the most recent favorable medical decision that

the claimant was disabled or continued to be disabled.  § 404.1594(b)(1).  The decision

concerning whether or not a claimant's condition has improved is primarily a factual inquiry

which often depends on the credibility to be given various witnesses, a responsibility given to

the trier of fact.  <u>See</u> <u>Nelson</u>, 946 F.2d at 1316; <u>Benskin v. Bowen</u>, 830 F.2d 878, 883 (8th Cir.

1987).  Here, the ALJ combined the continued entitlement review with the original

determination in one partially favorable decision.  This is not a typical medical improvement

case.

      In making this determination, the ALJ again performed a proper credibility determination

using the framework set forth in <u>Polaski</u>, 739 F.2d at 1322, the regulations at 20 C.F.R. §

404.1529, and SSR 96-7p.  As stated above, if the ALJ finds inconsistencies between Plaintiff's

subjective complaints and the evidence of record, he may discount such complaints. <u>Id.</u>  The

Eighth Circuit has held that "where adequately explained and supported, credibility findings are

for the ALJ to make."  <u>Lowe</u>, 226 F.3d at 972 (citing <u>Tang</u>, 205 F.3d at 1087).  When an ALJ

specifically discredits a Plaintiff's testimony for stated reasons, the court normally defers to the

ALJ's determinations of credibility.  <u>See</u> <u>Eichelberger</u>, 390 F.3d at 590 ("We will not substitute

our opinion for that of the ALJ, who is in a better position to assess credibility.").

      The ALJ noted that by July 21, 2004, Plaintiff exhibited no motor or sensory deficits, had

a stable gait, "good" leg strength, 100 percent lumbar flexion, 75 percent lumbar extension,

negative straight leg raise testing, no pain to palpation, and a patent neural foramen and canal

(Tr. 19,174, 197). The record contains <u>no</u> objective evidence regarding back or hip pain after July 21, 2004. The only objective medical evidence during this period relates to examinations for two upper respiratory infections, and an examination for seasonal allergies (Tr. 114-18). This evidence does not support Plaintiff's allegations of disabling back and hip pain. Although an ALJ may not discount allegations of disabling pain solely on the lack of objective medical evidence, a lack of objective medical evidence is an important factor which the ALJ may consider in determining a claimant's credibility. <u>See</u> <u>Forte</u>, 377 F.3d at 895 (citing <u>Tennant</u>, 224 F.3d at 871). Plaintiff argues that the ALJ improperly relied solely on the lack of objective medical evidence to make his determination that she was no longer disabled. Pl.'s Br. at 6-7. However, as discussed below, this was only one factor among many which the ALJ considered.

The ALJ considered the medical evidence of record, and found that after July 21, 2004, Plaintiff did not seek regular treatment for her allegedly disabling impairments (Tr. 18). In fact, the record shows that she sought <u>no</u> treatment after July 21, 2004, over one year prior to her administrative hearing on September 28, 2005 (Tr. 345). The Eighth Circuit has held that the a failure to seek treatment from any physicians for seven months prior to the administrative hearing is a legitimate factor in discounting a plaintiff's subjective complaints. <u>See</u> <u>Moad v. Massanari</u>, 260 F.3d 887, 890 (8th Cir. 2001) (citing <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir.1997) ("failure to seek medical assistance for her alleged physical ... impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits"). <u>See</u> <u>also</u> <u>Long v. Chater</u>, 108 F.3d 185, 188 (8th Cir. 1997) (citing <u>Ostronski v. Chater</u>, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain are inconsistent with the failure to seek regular treatment).

Plaintiff argues that she sought no further treatment because she had undergone treatment from a chiropractor, surgery, physical therapy, and epidural injections, and that none of these treatments had rendered her relief. Pl.'s Br. at 6. This is not supported by the record. The record shows that Plaintiff initially sought treatment from a chiropractor, and was essentially pain free within a few weeks (Tr. 323-26). Plaintiff also stated that physical therapy was not helpful, however, this is not supported by the record either. Plaintiff began physical therapy in June 2003, to resolve a muscle spasm (Tr. 274). Throughout her this course of therapy Plaintiff reported a pain level of only <u>two</u> on a scale of one to ten (Tr. 222-54). In July 2003, Plaintiff reported feeling "a lot better" (Tr. 222).

Dr. Yingling performed decompression surgery for lumbar stenosis on August 11, 2003 (Tr. 268), and Plaintiff subsequently reported feeling "much better," with "no significant pain" (Tr. 267). She continued to be pain free until March 16, 2004, at which time she complained of worsening "stiffness and soreness" in her back and hips (Tr. 265). An MRI scan showed "good" decompression so Dr. Yingling recommended epidural injections (Tr. 197). After the first epidural injection in June 2004, Plaintiff reported improvement (Tr. 155), and after the second injection Plaintiff was "pain free" (Tr. 161). She stated that it was "just an ache" (Tr. 161). Plaintiff sought no further treatment. The above evidence shows that treatments were successful in reducing Plaintiff's symptoms of pain. Impairments that are controllable or amenable to treatment do not support a finding of disability. <u>See</u> <u>Brown v. Barnhart</u>, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (citations and quotation omitted); <u>Kelley v. Callahan</u>, 133 F.3d 583, 589 (8th Cir. 1998); <u>Kisling v. Chater</u>, 105 F.3d 1255, 1257 (8th Cir. 1997).

Plaintiff also argues that she sought no further treatment because she was told there was nothing further that could be done. Pl.'s Br. at 6. However, there is no evidence in the record to support this statement. In fact, Dr. Steele instructed Plaintiff to return two to four weeks after the second epidural injection for a follow up appointment (Tr. 158). However, she did not do so.

The ALJ found that Dr. Steele's July 21, 2004 report that Plaintiff's pain was "just an ache" following the second epidural injection, considered in light of his June 10, 2004 treatment notes, Dr. Yingling's April 8, 2004, and May 27, 2004 treatment notes, the Health South Rehabilitation notes dated April 23, 2004 and the MRI scan, documented significant medical improvement in Plaintiff's symptoms of pain (Tr. 18). On April 8, 2004, Dr. Yingling suspected musculoskeletal pain, and found that although she had some lumbosacral tenderness on examination, she had "good" leg strength and her gait was stable (Tr. 17, 198). The Health South Rehabilitation note showed only a "slight" restriction in Plaintiff's gastrocnemius and piriformis, and no deficits in her hamstrings (Tr. 17, 214). She exhibited full to nearly full leg strength, and although she had some continued loss of lumbar range of motion, she exhibited 100 percent lumbar flexion and 75 percent lumbar extension (Tr. 17, 214). Dr. Yingling noted that the MRI scan showed "good" decompression at L4-5 (Tr. 17, 197). There was some residual disc bulge and "moderate" residual or recurrent stenosis of the canal at L3-4, but "it [was] not severe" (Tr. 197). Finally, Dr. Steele's notes showed reported improvement after the initial epidural injection, and her pain was "just an ache" after the second epidural injection (Tr. 17-18, 158-61, 174-75). Examination by Dr. Steele showed no tenderness to palpation, no radiation of pain, straight leg raise testing was negative, and there were no sensory or motor deficits in the lower extremities (Tr. 174). As stated above, impairments that are controllable or amenable to

treatment do not support a finding of disability.  See Brown, 390 F.3d at 540 ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (citations and quotation omitted); Kelley, 133 F.3d at 589; Kisling, 105 F.3d at 1257.

Plaintiff testified she took only Daypro, a non-steroidal anti-inflammatory medication, and Tylenol on a regular basis (Tr. 361).  She occasionally took Darvocet, a narcotic pain medication, or Flexeril, a muscle relaxant (Tr. 361).   The ALJ found that the lack of regular use of strong pain medications also detracted from the credibility of Plaintiff's allegations (Tr. 18). See Kelley, 133 F.3d at 589 (allegations of disabling pain may be discredited by evidence that the claimant takes only occasional pain medications); Long, 108 F.3d at 188 (citing Ostronski, 94 F.3d at 419 (complaints of functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for his or her symptoms).

Plaintiff testified that she did not take Darvocet and Flexeril on a regular basis due to side effects, stating that they made her feel "thick-headed" (Tr. 361).  However, there is no indication in the record that Plaintiff reported this, or any other, side effect to her physicians.  This factor also weighs against Plaintiff's credibility.  See Zeiler, 384 F.3d at 936 ("She did not complain to her doctors that her pain medication made concentration difficult."); Depover, 349 F.3d at 566 ("We also think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention Mr. Depover having side effects from any medication."); Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994) (it weighs against Plaintiff's credibility that there is no indication in the medical record that Plaintiff complained of any adverse side effects from pain medications to any of her doctors).

The ALJ again considered that none of Plaintiff's physicians restricted her activities or imposed <u>any</u> functional limitations (Tr. 18). The ALJ may properly consider physician imposed restrictions, or lack thereof, in making his credibility determination. See <u>Choate</u>, 457 F.3d at 870 ("There is no indication in the treatment notes that either Dr. Freiman or any of Choate's other doctors restricted his activities, or advised him to avoid prolonged standing or sitting."); <u>Young</u>, 221 F.3d at 1069 (citing <u>Brown</u>, 87 F.3d at 964-65 (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability)).

As noted above, Plaintiff testified at the hearing that she needed to lie down two to four times per day for 30 minutes to one hour at a time, for a total of three to five hours per day (Tr. 361-62, 370). The ALJ again found there to be no evidence in the record showing Plaintiff was advised to lie down during the day (Tr. 18). The fact that no physician stated that Plaintiff needed to lie down during the day indicates that Plaintiff was lying down due to choice rather than medical necessity. See <u>Zeiler</u>, 384 F.3d at 936 ("Finally, there is no medical evidence supporting Zeiler's claim that she needs to lie down during the day."); <u>Fredrickson</u>, 359 F.3d at 977 n.2 ("There is no evidence in the record that Fredrickson complained of such severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily."); <u>Hinkle</u>, 963 F. Supp. at 1546 (medical evidence did not support the plaintiff's claim that he was required to lie down and rest during the day).

The ALJ again considered that Plaintiff alleged limitations on her activities of daily living (Tr. 19). However, he noted that allegations of disability are not self-proven by accompanying allegations of limited activities (Tr. 19). Although if accepted as true, Plaintiff's daily activities show some limitations, the ALJ is not required to believe all of a claimant's

assertions concerning her activities. See Johnson, 87 F.3d at 1018. The ALJ found that for the many reasons discussed above, improvement with treatment, the lack of treatment after July 21, 2004, the lack of physician imposed limitations, and the lack of regular prescription pain medications, Plaintiff's allegations, including her allegations of severely limited daily activities, were not credible (Tr. 19). The ALJ may discount subjective complaints if inconsistencies are apparent in the evidence as a whole. See Eichelberger, 390 F.3d at 589 ("We have been careful to explain that an ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances."); Wheeler, 224 F.3d at 895 (citing Hutton, 175 F.3d at 655).

Finally, the ALJ again considered that Plaintiff's earnings record showed a fairly steady work history (Tr. 19), see O'Donnell, 318 F.3d at 817 (prior work history of fourteen years supports credibility)(citing Jenkins, 196 F.3d at 925), but that any credibility this afforded Plaintiff was overwhelmed by the many factors discussed above (Tr. 19). These factors included improvement of Plaintiff's impairment with treatment, the lack of treatment after July 21, 2004, the lack of physician imposed limitations, and the lack of regular prescription pain medications (Tr. 19). Because the ALJ articulated the inconsistencies upon which he relied in discrediting Plaintiff's testimony regarding her subjective complaints, and because his credibility finding is supported by substantial evidence on the record as a whole, his credibility finding should be affirmed. See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996).

After properly finding Plaintiff's subjective complaints were not fully credible, the ALJ proceeded to the RFC determination for the period subsequent to July 21, 2004 (Tr. 20). As stated above, RFC is the most an individual can do despite her limitations, see 20 C.F.R.§

404.1545, and it is a determination based upon **all** the evidence of record.  See Pearsall, 274 F.3d

at 1217-1218 (citation omitted); Dykes, 223 F.3d at 866-67 (citing 20 C.F.R. § 404.1545; SSR

96-8p at pp. 8-9).  Although it is a medical question, the RFC findings are not based only on

"medical" evidence, i.e., evidence from medical reports or sources; rather an ALJ has the duty, at

step four to formulate RFC based on all the relevant, credible evidence of records.  See

McKinney, 228 F.3d at 863 (the Commissioner must determine a claimant's RFC based on all of

the relevant evidence, including the medical records, observations of treating physicians and

others, and an individual's own description of his limitations).  See also 20 C.F.R. § 404.1545;

SSR 96-8p.

 For the period beginning July 22, 2004, the ALJ determined that Plaintiff's impairments

precluded, at most, frequently lifting more than 25 pounds and occasionally lifting more than 50

pounds (Tr. 20-21).  He determined that the evidence supported no other limitations (Tr. 20-21).

The ALJ then considered the requirements of Plaintiff's past relevant work as an administrative

assistant (Tr. 20, 108).  Plaintiff indicated in her Disability Report that she was never required to

lift over 25 pounds (Tr. 71, 108).  Accordingly, the ALJ properly determined that her RFC did

not preclude the performance of her past relevant work as an administrative assistant as she

performed it (Tr. 20).

 Plaintiff's arguments that her testimony showed she was disabled and that the ALJ failed

to consider the effect of the combination of her impairments are addressed in Argument I above

and need not be repeated here.  The ALJ properly determined that Plaintiff was no longer under a

disability as defined in the Act beginning July 22, 2004.

## Conclusion

Plaintiff had a fair hearing and full administrative consideration in accordance with applicable statutes and regulations. Substantial evidence on the record as a whole supports the Commissioner's decision. Accordingly, the Commissioner's decision should be affirmed.

Respectfully submitted,

CATHERINE L. HANAWAY
UNITED STATES ATTORNEY

    s/ Jane Rund
JANE RUND, Bar #47298
Assistant United States Attorney
111 S. 10th Street, Suite 20.333
St. Louis, Missouri 63102
(314) 539-2200
(314) 539-2777 FAX

OF COUNSEL
Frank V. Smith, III
Chief Counsel, Region VII
Social Security Administration

By
Kristin Everhart, Ks. Bar # 21442
Assistant Regional Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2007, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: Donald Rhodes, Attorney for Plaintiff, P.O. Box 226, Bloomfield, Missouri 63825.

s/ Jane Rund
JANE RUND #47298
Assistant United States Attorney