# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JANICE M. VAN MATRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:06CV133MLM |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application of Janice M. Van Matre ("Plaintiff") for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et. seq. Plaintiff filed a brief in support of the Complaint. Doc. 11. Defendant filed a brief in support of the Answer. Doc. 13. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). Doc. 7.

## I.
## PROCEDURAL HISTORY

Plaintiff applied for disability benefits on March 5, 2004, alleging an onset date of January 2, 2003. Tr. 65-67. Her application was denied on May 28, 2004. Tr. 48-52.[2] Plaintiff requested a

---

[1]       Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Jo Anne B. Barnhart as the Commissioner of Social Security.

[2]       Missouri is one of several test states participating in modifications of the disability determination procedures which apply in this case. 20 C.F.R. §§ 404.906 and 404.966 (2002). These modifications include, among other things, the elimination fo the reconsideration step and, at times, the elimination of the Appeals Council review step in the administrative appeals process. See id. Therefore, Plaintiff's appeal in this case proceeded directly from her initial denial of benefits to the administrative law judge level.

hearing which was held before Administrative Law Judge ("ALJ") Craig Ellis on March 28, 2005. Tr. 345-79. On August 25, 2005, the ALJ issued a decision in which he found that Plaintiff was not disabled as defined in the Act prior to June 10, 2003. The ALJ further found that Plaintiff was under a disability as defined in the Act from June 10, 2003, through July 21, 2004, and that she was no longer under a disability after July 21, 2004. Tr. 14-22. The Appeals Council denied Plaintiff's request for review. Tr. 3-5. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)). Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1.

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger, 390 F.3d at 590-91; Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. §§ 404.1520(f). Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v.

Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).  In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or  deny benefits without being subject to reversal on appeal.

Id. at 535.  See also Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision"); Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994);  Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).  Instead, the district court must simply determine  whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence").  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted).  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ.& Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health & Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot

perform his or her past relevant work can perform other work which exists in the national economy. Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Id. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Rautio, 862 F.2d at 180; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. Krogmeier, 294 F.3d at 1022.

Plaintiff in the matter under consideration alleges that the ALJ committed reversible error by applying an improper standard when assessing the pain suffered by Plaintiff, by failing to give appropriate weight to the subjective complaints of Plaintiff, and by failing to assess the combination

of Plaintiff's impairments. Plaintiff also contends that the ALJ did not consider Plaintiff's medical records after July 21, 2004.

As stated above Plaintiff alleged a disability onset date of January 2, 2003. She alleged that she is disabled due to arthritis in her back, degenerative disc disease of the lumbar spine, low back and hip problems, and severe pain. Plaintiff also alleged that she has obesity, hyperlipidemia, atherosclerotic heart disease, carpal tunnel syndrome, and gastroesophogeal reflux disease. The ALJ found that Plaintiff's obesity, hyperlipidemia, atherosclerotic heart disease, carpal tunnel syndrome and gastroesophogeal reflux disease were non-severe in nature singularly and in combination during all periods since Plaintiff's alleged onset date. The ALJ did find that Plaintiff was disabled due to spine, back and hip pain from June 10, 2003, through July 21, 2004. The ALJ found, however, that Plaintiff was not disabled prior to or after that period.

## A.    ALJ's Assessment of Plaintiff's Pain:

The ALJ considered that there is a lack of documentation to support Plaintiff's allegation of pain; that the medical records do not document the presence of long term and significant atrophy or loss of muscle tone during the period prior to June 10, 2003, or since July 21, 2004; and that the lack of documentation is inconsistent with Plaintiff's complaints of disabling pain.

Plaintiff contends that the ALJ should have relied upon Cole v. Harris, 641 F.2d 613 (8th Cir. 1981), when considering her allegations of pain. In Cole, the Eighth Circuit found that the ALJ placed too much emphasis on the dearth of objective medical evidence to support the claimant's allegations. Nonetheless, the Eighth Circuit does hold that a lack of objective medical evidence is an important factor for consideration by an ALJ when assessing a claimant's credibility. While an ALJ may not reject a claimant's subjective complaints based solely on the lack of medical evidence to fully corroborate an allegation of disabling pain, Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996),

the absence of an objective medical basis to support the degree of a plaintiff's subjective complaints is an important factor in evaluating the credibility of the testimony and the complaints.  Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987).  See also Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004)  (citing Tennant v. Apfel, 224 F.3d 869, 871 (8th Cir.2000)).

Although the ALJ considered the lack of medical evidence to support Plaintiff's claims, the ALJ did consider the medical evidence of record.  The ALJ considered hospital records of August 2002 which reflect that Plaintiff was hospitalized for unstable angina and that other diagnoses at this time included obesity, hyperlipidemia, a history of reflux disease and of hiatal hernia. The ALJ also considered treatment notes from Patient First, in Virginia Beach, Virginia, which reflect that Plaintiff was seen from January 1999 through June 2002 for various complaints including sinusitis and upper respiratory infections; that on September 26, 2002, Plaintiff had a stent placed in the left anterior descending artery for unstable angina and that she had done very well since that time; and that aterosclerotic heart disease was amongst Plaintiff's diagnoses on this date.  The court notes that records of Patient First dated March 9, 2001 and June 28, 2002, reflect that Plaintiff was seen for sinusitis.  Medical records of March 9, 2001 reflect that Plaintiff's neck was supple, her chest was clear, her heart had regular rhythm and no murmur, and her lungs were clear; that spriometry was normal; that the impression was masomotor rhinitis; and that Plaintiff was "strongly advised to quit smoking."  Tr. 134.

The ALJ considered medical records from Cape Girardeau Physician Associates from January 6, May 2, and June 18, 2002, on which dates Plaintiff was seen for chest tightness and gastroesophogeal reflux disease.

The ALJ also considered the medical records of Cross Trails Medical Center ("Cross Trails") which document that Plaintiff was seen from November 2002 through May 2003 for various complaints including colds, sinusitis, gastroesophogeal reflux disease, irregular menses, and occasional depression. The ALJ considered records of Cross Trails dated May 15, 2003, which reflect that Plaintiff stated on this date that she had back and hip pain for two or three months and that her pain was intermittent. Notes of this date reflect that Plaintiff had "full rom" in both legs; that she could "nearly touch her toes"; and that she was to be sent for a CT of the LS spine. Notes of Cross Trails dated May 28, 2003, state that examination showed Plaintiff's blood pressure was 112/70; that she was 5'4" tall and weighed 224 pounds; and that her Heent, thyroid, heart, lungs, back, abdomen/trunk, extremities, adnexa, rectum and skin were normal. Tr. 129.

The ALJ considered records from Plaintiff's chiropractic treatment. The court notes that Plaintiff was seen by Beverly Peters, D.C., at Bollinger County Chiropractic, on January 22, 2003, on which date Plaintiff reported that five days earlier she started having back pain while lifting and moving furniture. Medical records of this date reflect that Plaintiff was shown stretching and flexibility exercises for the lumbar spine. Tr. 326. Dr. Peters's records of January 30, 2003 reflect that Plaintiff indicated that she was still having pain and stiffness in the low back and occasionally in the posterior upper thigh and pain in the neck and shoulders after strenuous activity. Dr. Peters advised Plaintiff on this date to continue her exercises. Dr. Peters's records of February 5, 2003, reflect that Plaintiff reported that she was *improved since her last visit*; that her period of "lbp and leg stiffness [were] diminished and w/less intensity; and that the *pain in the neck and shoulders* after periods of strenuous activity [was] *less frequent* as well." Tr. 324.

The ALJ considered that Plaintiff had an MRI of the lumbar spine on May 16, 2003, which did show a congenitally small lower lumbar spine canal and bulged discs at L3-4 and L4-5, recess

stenosis at L4-5, disc narrowing at L5-S1, and minimal bulging at L5-S1. As well as considering the aforementioned medical records, the ALJ also considered Plaintiff's testimony including her testimony that she cannot stand for more than five to ten minutes and that she must lie down for thirty or more minutes, three or four times a day.

The court notes that Plaintiff reported on February 12, 2003, that she was *feeling much better* and that the *pain and stiffness in her lower back were occasional* and that *the pain in her neck and shoulder were occasional*. Tr. 323. Moreover, on May 15, 2003, Plaintiff reported that *pain was intermittent* and on this date records reflect that she had *full range of motion* and could nearly touch her toes. Tr. 131. The court also notes that David Yingling, M.D., a neurosurgeon, reported on June 10, 2003, that prior diagnostic testing showed Plaintiff had moderately severe stenosis at L3-4 through L4-5 and that Plaintiff had significant lumbar stenosis with back pain and significant muscle spasm.

The ALJ concluded that Plaintiff's medical records for the period prior to June 10, 2003, do not document ongoing medical observations of significant deficits in strength, motion, coordination, reflexes, tone and sensation or ongoing findings of spasm and tenderness. The ALJ found that the medical records did not bolster Plaintiff's credibility with respect to her disability prior to June 10, 2003, and concluded that Plaintiff was not disabled prior to this date. The court finds that the ALJ's decision in this regard is supported by substantial evidence on the record as a whole and that it is consistent with the case law and Regulations. See Forte, 377 F.3d at 895; Jones, 86 F.3d at 826; Russell, 950 F.2d at 545; Edwards, 809 F.3d at 508. The court further finds that for the period prior to June 10, 2003, the ALJ properly considered the lack of medical evidence upon discounting Plaintiff's complaint of disabling pain. See Russell, 950 F.2d at 545.

The ALJ concluded based on the medical records and Plaintiff's subjective complaints, that Plaintiff was disabled during the period from June 10, 2003, through July 21, 2004. As such, the court need not address the ALJ's decision in this regard. The court will, however, address Plaintiff's medical records for the period during which she was found disabled to the extent those records are relevant to Plaintiff's condition after July 21, 2004.

As the ALJ found that Plaintiff was not disabled from July 21, 2004, through the date of the decision, the court will consider whether the ALJ's assessment of Plaintiff's pain after July 21, 2004, is supported by substantial evidence. The ALJ considered records of Jeffrey Steele, M.D., dated July 21, 2004, together with Dr. Yingling's records of April 8 and May 27, 2004, Health South Rehabilitation ("Health South") notes of April 23, 2004, an MRI report of May 27, 2004, and Dr. Steele's notes of June 10, 2004, and concluded that these records document significant improvement in Plaintiff's symptoms of pain after July 21, 2004.

Dr. Yingling reported on April 8, 2004, that Plaintiff was seen on that date for reevaluation three weeks after her last appointment; that Plaintiff reported that physical therapy had not helped her and that she continued to have pain going down her back toward her hips; that upon examination Plaintiff had "lumbosacral tenderness but no sciatic tenderness, that she had some trochanteric tenderness on the left, that she had good strength in her legs, and her gait was stable; that this doctor was going to order a repeat MRI; that Plaintiff was also having trouble with pain in her neck and shoulders and that he would order an MRI in regard to these complaints; that Plaintiff reported numbness and tingling in both hands when they are up; that this numbness and tingling wakes her up at night; that this doctor was going to order EMG and NCV testing of Plaintiff's upper extremities to rule out carpal tunnel syndrome; and that if the MRI did not show any surgical lesion in the lumbar spine, he would "most likely recommend referral to the Pain Clinic for injection therapy." Tr. 198.

Further, a discharge summary from Health South, dated April 23, 2004, states that Plaintiff's chief complaint was pain which was *"7-8/10" at worst* and that objective examination showed Plaintiff had "*slight restriction*" in both the piriformis, *full excursion/no deficits* in the hamstrings, a *slight restriction* in the gastrocnemius and that her *hip flexion was +4/5, her knee extension was 5/5, her knee flexion*, her ankle dorsiflexion, plantarflexion, and right eversion were - 5/5, and her *left ankle eversion was 4/5.* The assessment on April 23, 2004, was that Plaintiff "made minimal gains with therapy"; that Plaintiff exhibited a fair prognosis from skilled rehabilitative therapy in conjunction with a home exercise program; that Plaintiff was independent in her home exercise program; and that *twenty-five percent* of Plaintiff's goals had been met. Tr. 200.

The ALJ considered Dr. Yingling's notes of May 27, 2004 including that Dr. Yingling reported on this date that Plaintiff's *carpal tunnel syndrome had not yet resulted in any significant weakness or atrophy*. The court notes that Dr. Yingling reported on this date that Plaintiff returned for re-evaluation after her last visit; that she continued to have low back pain and symptoms of carpal tunnel syndrome in her right hand greater than the left; that EMG and NCV results indicated carpal tunnel syndrome right greater than left; that a cervical MRI did *not show any neural impingement*; that a lumbar MRI showed *good compression* at L4-5 and a broad disc bulging at L3-4 with "*moderate residual or recurrent narrowing of the canal but it is not severe*"; that the impression was that Plaintiff's low back pain was "probably more related to degenerative disease although she does have mild to moderate narrowing at L-3-4 still; that the impression also included carpal tunnel syndrome "which is quite symptomatic on the right and not as bad on the left"; that Plaintiff said she did not want to have carpal tunnel surgery until after the summer; and that Dr. Yingling suggested that Plaintiff have lumbar epidural injection for her back pain with which suggestion Plaintiff agreed. Tr. 197.

Further, the ALJ considered that records Jeffrey S. Steele, M.D., dated June 10, 2004, which date is approximately one month prior to the date that the ALJ found that Plaintiff was no longer disabled. The court notes that on this date Dr. Steele reported that Plaintiff had surgery of the lumbar spine in August 2003; that following the surgery her pain was relieved; and that she experienced recurrent pain in November and December 2003 which pain had persisted. Dr. Steele further reported on this date, pursuant to examination, that Plaintiff was an obese female who was in *"no acute distress"*; that "pain not reproduced by palpitation in the lumbar region"; that there was "*[n]o radicul radiation of pain* produced by straight leg raising in the seated position"; and that there were "*[n]o gross sensory or motor deficits* in the lower extremities." Dr. Steele records of June 10, 2004 further state that Plaintiff had an MRI of the lumbar spine and that according to Dr. Yingling's office notes the MRI showed *good compression at L4-5*; that at L3-4 there was "broad disc bulging and *moderate residual or recurrent narrowing of the canal but not to a severe extent*." Dr. Steele also reported that Plaintiff received a lumbar epidural steroid injection on this date; that she tolerated the procedure well and "suffered no ill effects"; and that Plaintiff was instructed to return to the pain clinic in approximately two to four weeks for a follow-up appointment. Tr. 174-75.

The ALJ further considered Dr. Steele's records of July 21, 2004, after which date the ALJ found that Plaintiff was not disabled. The ALJ considered that these records reflect that Plaintiff had a lumbar epidural steroid injection on this date and that she reported that since the injection of June 10, 2004 "*the pain between her hips had lessened at night*"; and that she "experienced *less shooting pain* in her extremities." Tr. 18 (citing Tr. 158, 161). In her appeal to the Appeals Council, Plaintiff asserted that the ALJ incorrectly considered that notes of July 21, 2004 state that Plaintiff said that her pain was "just an ache" since her prior injection. Rather, Plaintiff contends that her statement on July 21, 2004 referenced the pain she had as a result of the injection received on July 21, 2004. To

the extent that Plaintiff may be correct, "an ALJ's arguable deficiency in opinion-writing technique does not require us to set aside a finding that is supported by substantial evidence." Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (citing Carlson v. Chater, 74 F.3d 869 (8th Cir. 1996)).

The court notes that Plaintiff was seen at the Crossroads Medical Center on November 16, 2004, for complaints of cough and sinus pain. Notes of this date state, among other things, that Plaintiff was in no acute distress, that she had no pedal edema, and that smoking cessation was recommended. Tr. 118-19. Plaintiff was next seen at the Crossroads Medical Center on December 28, 2004, for nasal and chest congestion. Notes of this date state, among other things, that Plaintiff was in no acute distress. Tr. 116-17. Plaintiff was also seen at the Crossroads Medical Center on March 1, 2005, for chest congestion and soreness. Notes of this date reflect, among other things, that Plaintiff was in no acute distress and that smoking cessation was recommended. Tr. 114-15. While the ALJ did not specifically mention the records of the Crossroads Medical Center from June 2, 2004, through March 1, 2005, and to the extent that the ALJ did not mention that Plaintiff received a steroid injection on July 21, 2004, from Dr. Steele, an ALJ's failure to cite specific evidence, does not indicate that such evidence was not considered. See Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). See also Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citations omitted); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"). Even assuming, arguendo, that the ALJ failed to consider the Crossroads Medical Center from June 2, 2004, through March 1, 2005, such a failure would not have had an effect on the outcome of this matter. See Reynolds v. Chater, 82 F.3d 254,

258 (8th Cir. 1996); <u>Carlson v. Chater</u>, 74 F.3d 869, 871 (8th Cir. 1996); <u>Robinson v. Sullivan</u>, 956 F.2d 836, 841 (8th Cir. 1992). Therefore, the failure of the ALJ to specifically address, or arguendo, consider, these records does not require reversal.

The court finds that the ALJ's consideration of the lack of medical evidence to support Plaintiff's claim of disability in the period after July 21, 2004, is supported by substantial evidence and that the ALJ's decision in this regard is consistent with the Regulations and case law. <u>See</u> <u>Forte</u>, 377 F.3d at 895; <u>Russell</u>, 950 F.2d at 545. For the reasons articulated above, the court finds that the ALJ's applied the correct standard when assessing Plaintiff's allegation of disabling pain during all relevant periods and that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the case law and Regulations. Further, the court finds that the ALJ's decision that Plaintiff was not disabled prior to June 10, 2003, and after July 21, 2004, is supported by substantial evidence.

**B.     Plaintiff's Combination of Impairments:**

Plaintiff contends that the ALJ did not consider her combination of impairments. At the second step of the sequential analysis, an ALJ must consider whether a claimant has a severe impairment; if the claimant is found not to have a "severe impairment," he is not disabled. <u>See</u> <u>Brown v. Barnhart</u>, 390 F.3d 535, 538 (8th Cir. 2004) (citing 20 C.F.R. § 404.1520(c)). "'Severe impairment' is defined as any impairment *or combination of impairments* that significantly limits physical or mental ability to perform basic work, not considering age, education, and work experience." <u>Id.</u>(citing 20 C.F.R. § 404.1520(c)) (emphasis added). "At the third step, if the claimant has an impairment that the Commissioner has deemed is so severe as to preclude ability to work, and has had or will have that impairment for at least twelve months, the claimant is disabled." <u>Id.</u> (citing 20 C.F.R. § 404.1520(d)). "In determining a claimant's RFC, 'the ALJ must consider the effects of the

combination of both physical and mental impairments,' Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir.2004), to "determine whether the combination of ... impairments is medically equal to any listed impairment,' Shontos v. Barnhart, 328 F.3d 418, 424 (8th Cir.2003) (quoting 20 C.F.R. §404.1526(a))." Raney v. Barnhart, 396 F.3d 1007, 1001(8th Cir. 2005). The Eighth Circuit held in Raney that the ALJ's decision that the claimant was not disabled was supported by substantial evidence and was consistent with the Regulations where the ALJ considered the claimant's impairments, expressly stated that he considered the claimant's impairments "individually and in combination," and based his RFC assessment on the combination of the claimant's impairments. Id. Where an ALJ discusses a claimant's impairments individually and specifically finds that his "medically determinable impairments (individually or in combination)" do not meet or medically equal the listed impairments, the ALJ's analysis in regard to considering the combination of impairments is sufficient. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).

Plaintiff submitted to the Appeals Council a letter from David C. Boardman, D.O., dated September 14, 2005, in which letter this doctor stated, among other things, that in his opinion Plaintiff's "disability is multifactorial"; that Plaintiff "suffers from daily back and joint pain in spite of pain medication"; that this pain "inhibits her normal daily activities"; that Plaintiff's pain "precludes routine exercise"; that "this, in turn, contributes to her obesity and further exacerbates her symptoms"; that Plaintiff has "developed a dependence on alcohol to alleviate her pain and symptoms of depression"; and that Plaintiff "is unable to obtain or retain employment." Tr. 344.

A physician's opinion may be discounted or disregarded "where other medical assessments are supported by better or more thorough medical evidence." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). A physician's opinion "does not automatically control or obviate the need to evaluate the record as whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). Moreover, a

physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). A brief conclusory letter from a physician stating that a claimant is disabled is not binding on the Secretary. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir.1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."). See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006); Chamberlain, 47 F.3d at 1494; Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir.1994) (citing Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir.1991)); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by a physician's conclusory statements of total disability). As such, Dr. Boardman's opinion regarding the combination of Plaintiff's impairments is not controlling.

As articulated above, the ALJ found Plaintiff disabled from June 10, 2003 through July 21, 2004, and found that prior to June 10, 2003, and after July 21, 2004, Plaintiff was not disabled. Further, as discussed above, the ALJ considered in great detail Plaintiff's medical records as well as her testimony. In particular, after considering these factors the ALJ found that Plaintiff's obesity, hyperlipidemia, atherosclerotic heart disease, carpal tunnel syndrome, and gastroesophogeal reflux disease "are non-severe *singularly and in combination*" during all periods since Plaintiff's alleged onset date. Tr. 15, 19. Additionally, after considering the evidence of record the ALJ found for the period prior to June 10, 2003, and after July 21, 2004, that Plaintiff's conditions precluded frequent lifting and carrying more than twenty-five pounds and occasionally lifting and carrying more than fifty pounds and that she had no other restrictions of any kind. The ALJ then considered, pursuant to Step

4 as set forth in the Regulations, the requirements of past relevant work as an administrative assistant and concluded that Plaintiff's RFC does not preclude her from performing this past relevant work. The ALJ found, therefore, that Plaintiff was not disabled prior to June 10, 2003, and that she was not disabled after July 21, 2004. As such, despite Plaintiff's allegation to the contrary, the ALJ did consider the combination of Plaintiff's alleged impairments. To the extent that the ALJ did not specifically mention that he was considering the combination of Plaintiff's impairments for the periods during which he found her not disabled, as stated above, such failure does not establish that he did not consider the combination of her impairments. See Montgomery, 69 F.3d at 275. In any case, the court finds that while not specifically stating that he was considering the combination of Plaintiff's impairments for the periods during which he found her not disabled, the text of the ALJ's decision makes it clear that he did, in fact, consider the combination of Plaintiff's impairments. See Raney, 396 F.3d at 1001; Brown, 390 F.3d at 538; Browning, 958 F.3d at 821. The court further finds that the ALJ's decision in this regard is supported by substantial evidence on the record as a whole.

## C. The ALJ's Credibility Findings:

Plaintiff alleges that the ALJ failed to give proper weight to Plaintiff's subjective complaints of pain. As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ. Guillams V. Barnhart, 393 F.3d 798, 801(8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996);

Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, upon concluding that Plaintiff was not disabled for the period prior to June 10, 2003, and since July 21, 2004, the ALJ considered that no medical records reflect that Plaintiff had persistent or adverse side effects from her medication and that the records do not reflect that she used strong narcotic pain medications during these periods. The court notes that Plaintiff testified that she took Daypro, a non-steriodal anti-inflammatory medication, and Tylenol. She also testified that she did not take Darvocet or Flexeril due to side effects. Tr. 136. The ALJ also considered that there is not medical evidence that Plaintiff sought treatment on a regular basis through physical therapy, a work hardening program or a pain clinic since July 21, 2004. The ALJ further considered that the medical records do not bolster Plaintiff's complaints of pain during the period since July 21, 2004.

Where a plaintiff has not been prescribed any potent pain medication, an ALJ may properly discount the plaintiff's complaints of disabling pain. Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents); (Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994); Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987) (holding that treatment by hot showers and taking dosages of Advil and aspirin do not indicate disabling pain); Cruse v. Bowen, 867 F.2d 1183, 1187 (8th Cir. 1989) (holding that minimal consumption of pain medication reveals a lack of disabling pain); Rautio v. Bowen, 862 F. 2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain). Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). Additionally, pursuant to Polaski, 730 F.2d at 1322, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994). Further, the failure of a claimant to report side effects from medication to her physicians detracts from her credibility. Seiler, 384 F.3d at 936; Depover, 349 F.3d at 566; Barret tv. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994). As such, the court finds that the ALJ properly considered the medication which Plaintiff took, the absence of side effects from medication, and the treatment she received during the relevant periods. The court further finds that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the Regulations and case law.

Second, while an ALJ may not reject a claimant's subjective complaints based solely on the lack of medical evidence to fully corroborate the complaint, Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996), the absence of an objective medical basis to support the degree of Plaintiff's subjective complaints is an important factor in evaluating the credibility of the testimony and the complaints. See Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987). As such, as discussed above, the court finds that the ALJ properly considered the lack of medical evidence to support Plaintiff's claims of pain and that substantial evidence supports the ALJ's decision in this regard.

Third, the ALJ considered Plaintiff's testimony that her daily activities were limited. In particular, the ALJ considered that Plaintiff testified that she has difficulties bending, lifting, standing, sitting, riding in a car, and performing household chores. The ALJ also considered Plaintiff's testimony that she has to slide down to her knees in order to sort laundry, that taking out the trash is too heavy for her to do, that heavy mowing is too painful for her, and that she must lie down for thirty minutes or more, three to four times a day. The ALJ considered that "allegations of disability are not self-proved by accompanying allegations of limited activities." Tr. 19. The ALJ found that Plaintiff's allegations regarding her daily activities were not credible. Indeed, a claimant is not required to prove that he is bedridden or completely helpless to be found disabled. See Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989); Easter v. Bowen, 867 F.2d 1128, 1130 (8th Cir. 1989). An ALJ, however, is not required to believe all of a claimant's assertions concerning her daily activities. Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996). "[S]ubjective complaints of pain cannot be disregarded solely because there is no supporting medical evidence, but they can be discounted if the ALJ finds inconsistencies in the record as a whole." Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (citing Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997)). A record,

such as that in the matter under consideration, which does not reflect physician imposed restrictions suggests that a claimant's restrictions in daily activities are self-imposed rather than by medical necessity. See Zeiler, 384 F.3d at 936 ("[T]here is no medical evidence supporting [the claimant's] claim that she needs to lie down during the day."); Fredrickson v. Barnhart, 359 F.3d 972, 977 n.2 (8th Cir. 2004) ("There is no evidence in the record that [the claimant] complained of severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily."). As such, the court finds that the ALJ's consideration of Plaintiff's allegations regarding her daily activities is consistent with the Regulations and case law and that it is supported by substantial evidence on the record.

Fourth, the ALJ considered Plaintiff's earnings record and that it showed a fairly steady work history. Tr. 19. The ALJ concluded that any credibility afforded Plaintiff because of her work history was overwhelmed by the numerous factors including Plaintiff's lack of treatment during the relevant periods and the lack of physician imposed restrictions. As such, the ALJ articulated inconsistencies in the record upon which he relied in discrediting Plaintiff's allegations of pain despite her steady work record. See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). An ALJ may properly "disbelieve a claimant's subjective complaints of pain because of inherent inconsistencies or other circumstances." Eichelberger, 390 F.3d at 589. The court finds, therefore, that the ALJ properly considered the inconsistencies in the record upon discrediting Plaintiff's allegations and that the ALJ's decision in this regard is supported by substantial evidence.

The court finds, therefore, despite Plaintiff's assertion to the contrary, that the ALJ's consideration of Plaintiff's subjective complaints of pain is based on substantial evidence and that it is consistent with the applicable Regulations and case law. For the reasons stated above, the court finds that the ALJ's decision that Plaintiff was not disabled from her alleged onset date of January 2, 2003, until June 10, 2003, and that she was not disabled after July 21, 2004, through the date of his

decision is supported by substantial evidence and that it is consistent with the Regulations and case law.

**IV.**
**CONCLUSION**

For the reasons articulated above the court finds that the decision of the ALJ is supported by substantial evidence on the record as a whole and that the Commissioner's decision, therefore, should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Brief in Support of Complaint is **DENIED;** Doc. 11

**IT IS FURTHER ORDERED** that separate Judgment shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 9th day of July, 2007.